**CONSUMER ATTORNEYS**
Beth K. Findsen, AZ #023205
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602)807-6676
F: (718) 715-1750
E: bfindsen@consumerattorneys.com
*Attorneys for Plaintiff, Doe*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| JOHN DOE,<br><br>               Plaintiff(s),<br><br>v.<br><br>HIRERIGHT, LLC,<br><br>            Defendant(s). | **Case No.:**<br><br>**COMPLAINT AND DEMAND FOR**<br><br>**JURY TRIAL** |

## COMPLAINT

John Doe ("Plaintiff" or "Mr. Doe") by and through his counsel brings the following Complaint against HireRight, LLC ("Defendant" or "HireRight") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as convicted of a particular felony when the case had been designated as a misdemeanor.

## INTRODUCTION

1.      This is an individual action for damages costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of a Class 6 felony of Facilitation to Commit Trafficking In Stolen Property in the Second Degree. Defendant's reporting is grossly inaccurate and untrue.

4.      Plaintiff's conviction for the offense was designated as a misdemeanor, not a felony.

5.      Plaintiff's prospective employer rejected Plaintiff's job application after receiving an employment-purposed consumer report, often called a background check report, from Defendant, which included the inaccurate felony conviction.

6.      Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records from Maricopa County, Arizona.  Using the information HireRight had obtained about the Plaintiff, it should have looked at the actual court file regarding the reckless conduct offense prior to publishing Plaintiff's report to his prospective employer.

7.      Had Defendant performed even a cursory review of the actual public court records, it would have discovered that Plaintiff's conviction was designated as a misdemeanor and not a felony.

8.      Upon information and belief, when the Defendant obtains criminal public records from its vendor or from a third party, it receives a warning or disclaimer about the accuracy of the records and informs the public that the only accurate record is the original file-stamped document.

9.      Maricopa County Clerk of Superior Court warns the public with this disclaimer, that reads in pertinent part:  *Any and all information contained within the Superior Court's database is recorded with an understanding that the information is true and correct in as far as all aspects of the documents physically filed with the Clerk of the*

*Superior Court. The Clerk of the Superior Court makes no warranty of any kind with respect to data or documents accessed, unless an original document with the Clerk of the Court filing stamp can be produced to substantiate proof of filing or error.*

10.     In fact, if the Defendant had heeded the public warning about the use of the information, it would have determined that the felony record it was reporting was, in fact, designated a misdemeanor.

11.     Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers because it does not heed the warning from the source of the information – that only the original, file-stamped document can be warranted as accurate.

12.     Defendant chooses to rely on electronic data other than original court documents to prepare and publish employment purposed consumer reports, which is unreasonable given the availability of the public documents and Defendant's obligation to use reasonable procedures to assure that the information it published about the Plaintiff was maximally accurate.

13.     Defendant knows its procedures are not reasonable and attempts to limit its own liability for inaccurate reports by placing a big disclaimer, in bold black lettering at the top of the employment-purposed consumer reports it sells to third parties, such as the Plaintiff's HireRight report, stating that it cannot guarantee the accuracy or truthfulness of the report about the Plaintiff, only that it "accurately copied" the information from public records.

14.     This statement is misleading because HireRight did not consult the actual public court records, it mere regurgitated electronic database information it obtained and failed to heed the Maricopa County Court admonition that to ensure the accuracy of the information, it must consult the original file-stamped record.

15.     Defendant's failure to follow reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

16.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers like the Plaintiff, seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

17.     Defendant's inaccurate report cost Plaintiff a good paying job and job security.

18.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; incursion of actual labor and loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep and other physical injuries and sickness; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

19.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

**PARTIES**

20.      Doe ("Plaintiff" or "Mr. Doe") is a natural person residing in Tempe, Arizona, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

21.     Defendant HireRight, LLC ("Defendant" or "HireRight") is a Delaware corporation doing business throughout the United States, including the State of Arizona and in this District, and has a principal place of business located at 100 Centerview Dr, Suite 300, Nashville, TN 37214.

22.     Among other things, Defendant sells employment-purposed consumer reports, often called background checks, to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, delay in hiring, or failure to promote.

23.    These reports are sold to third parties in connection with a business transaction initiated by the employer.

24.    An employer may only obtain a background check about a particular job applicant by first providing a disclosure to the consumer and obtaining the consumer's express authorization.

25.    Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information about consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

26.    This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

27.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, the Plaintiff resides in this District, the Defendant has directed substantial activity in this District.

## STATUTORY BACKGROUND

28.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

29.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer"

and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

30.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

31.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

32.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

33.    The FCRA provides a number of protections for job applicants and employees who are the subject of background checks for purposes of securing employment, housing, obtaining a security clearance, and other purposes.

34.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

35.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

36.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

37.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

1
2
3
4

### **DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

5
6
7
8
9

38.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

39.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

10
11
12
13
14

40.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

41.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

15
16
17
18
19
20
21
22

42.     Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

23
24
25

43.     Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

26
27
28

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://fiels.consumerfinance.gov/f/documents/201909_cfpb_market-snapsho-background-screening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

44.    Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate, not up to date, or incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

45.    Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

46.    Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

47.    Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor as a felony.

48.    As a provider of background check reports, Defendant is well aware of the FCRA requirements and is not only is it a member of the Professional Background Screening Association ("PBSA"), it publicizes the fact that it has achieved "background screening credentialing council accreditation."

49.    PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws. It also makes abundant information available to its members purportedly to achieve compliance with the FCRA.

## FACTS

**Plaintiff Applies for a Job with CloudKitchens' "Otter" Product**

50.    In the beginning of December 2022, a recruiter from City Storage Systems, LLC ("City Storage") d/b/a CloudKitchens, Inc. ("CloudKitchens") found Plaintiff on LinkedIn and invited him to apply for the position of Sales Enablement Trainer for CloudKitchens' product called "Otter."

51.     CloudKitchens contacted Plaintiff through LinkedIn four times regarding the Otter position.  Eventually, Plaintiff  applied for the position with CloudKitchens located in Maricopa County, Arizona.

52.     Upon applying to CloudKitchens, Plaintiff successfully completed a series of interviews.

53.     During these interviews, Plaintiff discussed with CloudKitchens his previous criminal history and explained he had been convicted of a felony in 2013.

54.     CloudKitchens assured him that they were "about to offer him the position."

55.     At the end of December 2022, CloudKitchens extended a job offer to Plaintiff for the position to which he applied.  he was told that he would report to Toronto, Canada for onboarding.  He followed up with the recruiter to let her know that he might have some challenges traveling to Canada but would do everything in his power to make it work.  CloudKitchens requested professional references, which Plaintiff provided, and required a background screening ("employment report.") be conducted and reviewed as a condition for hiring.

56.     Plaintiff was scheduled to begin the position on January 17, 2023.

**Defendant Published an Inaccurate Background Check Report to CloudKitchens**

57.     CloudKitchens contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

58.     On January 6, 2023, Plaintiff authorized City Storage [3] to run his background check.

59.     On or about January 11, 2023, City Storage ordered a criminal background check on Plaintiff from Defendant.

---

[3] The HireRight report about Plaintiff indicates that City Storage requested the report. City Storage and CloudKitchens are one and the same.

60.     Plaintiff expected his report to be ready quickly, but when he had not heard back about it for two days, on January 13, 2023, Plaintiff began calling HireRight almost daily to check on the status of his report.

61.     The Plaintiff's HireRight report indicates that on January 12, 2023, Defendant notified the employer that based on a "Global criminal search," record was found and that more research was needed.  The report reflects this search was completed and verified by QA on January 17, 2023, at 10:55 a.m.

62.     The Plaintiff's HireRight Report contained a second search record of "Statewide Criminal Search" with records found through the Arizona Administrative Office of the Courts.

63.     Upon information and belief, when Defendant obtains information from the Arizona Administrative Office of the Courts, it is warned to check original court documents for accuracy.

64.     The records that appeared in the Global search and the Statewide search contain the exact same case numbers, court identification, and charges.

65.     All electronic public access to Arizona court case information contain this disclaimer and warning:

**Please be aware of the following limitations of the case records displayed:**

• The information may not be a current, accurate, or complete record of the case.

• The information is subject to change at any time.

• The information is not the official record of the court.

• Not all cases from a participating court may be included.

• The information should not be used as a substitute for a thorough background search of official public records.

**The user is responsible for verifying information provided on this website against official court information filed at the court of record.** Use of this website shall indicate agreement by the user that the Arizona judiciary, including its courts, divisions, officers, and employees, shall not be liable for any loss, consequence, or damage

10

resulting directly or indirectly from the use of any of the information available through this website and that the Arizona judiciary does not provide any warranty, express or implied, that the information provided is accurate, current, correct, or complete.

66. The Plaintiff's HireRight report shows a notation that "further research" was needed as of January 16, 2023.

67. There is no indication on the report what further research was done for either the Global Search or the Statewide Search.

68. By ignoring the warnings that the information it reported about the Plaintiff could not be used without a "thorough background search of official public records," Defendant disregarded the Plaintiff's consumer rights.

69. Upon information and belief, Defendant has been sued numerous times in federal courts for the exact same violations of the FCRA and knows that its procedures violate the FCRA, put consumers a great risk of losing employment and their livelihoods as a result, yet Defendant intentionally follows a less expensive and less accurate procedure.

70. Defendant uses deceptive language to make it appear that it conducts "research" into public records likely to have an adverse impact on employment, when it does not actually research the actual records as admonished by the records source such as Maricopa County in this case.

71. The use of deceptive language demonstrates that the Defendant's purpose is to deceive its customers and innocent consumers.

72. On January 17, 2023, the day Plaintiff was supposed to begin his new job, Defendant had not yet completed Plaintiff's criminal record check, so Plaintiff's start date at Otter was pushed to February 13, 2023.

73. On or about January 23, 2023, in accordance with its standard procedures, Defendant completed its employment purposed consumer report about Plaintiff and delivered a completed report to City Storage.

74. The reality is that even though the "completed" report was not delivered until January 23, 2023, CloudKitchens already had knowledge of one felony about which the Plaintiff had informed it.

75. Upon information and belief, prior to January 23, 2023, when it published the "completed" report, Defendant had already communicated either orally or in writing, criminal public record information about the falsely-reporting second felony through its client portal where the employer viewed the progress and status of the items in each search category.

76. Here is the record that Defendant's employment-purposed consumer report about Plaintiff included twice in the same report: a grossly inaccurate and stigmatizing felony facilitation to commit trafficking in stolen property conviction from Maricopa County, Arizona:

| 2.) Case Nbr.: | CR2015-103833 | | |
|---|---|---|---|
| Comments: | | | |
| Identifiers: | Confirmation: Name, Date Of Birth, Address. NAME ON FILE (Wright, Daniel James) | | |
| Count: | 1 | Severity: | Felony (or equivalent) - Class 6 felony |
| Offense Date: | Nov 1, 2014 | Disp. Date: | Nov 4, 2015 |
| Offense: | Facilitation To Commit Trafficking In Stolen Property, Second Degree | | |
| File Date: | Jul 9, 2015 | | |
| Disposition: | Guilty | | |
| Sentence: | Fines, court costs, restitution, fees, and other assessments: Payment information not available. Probation: 3 years; count 2 restitution ($899.00); comments: probation discharged 11/02/2018, offense to remain undesignated; court (maricopa county superior); | | |

77. Plaintiff's conviction was a misdemeanor and not a felony.

78. CloudKitchens informed the Plaintiff that the presence of one felony was not a barrier to employment and "not a hard stop," but the presence of a second felony was dispositive to the employer, leading to the CloudKitchens legal team to disallow

hiring Plaintiff, even though the team that interviewed Plaintiff wanted to hire him, and had even extended the preliminary offer with the Canada onboarding schedule. The background screen gave false information that caused CloudKitchens to rescind the offer.

79. There is a material difference between felonies and misdemeanors under the law and to the employer in this case.

80. A cursory review of the widely available public court docket confirms that Plaintiff never pled guilty to or was convicted of a felony facilitation to commit trafficking in stolen property. Even a cursory examination of the docket would have informed the Defendant that its report did not accurately reflect the docket information.

81. Rather than check the original court records or deleting the non-conforming record, Defendant reported the erroneous information.

82. Therefore, it is obvious not only that HireRight didn't accurately copy the information from the public record, which confirms that Plaintiff was only ever convicted of *misdemeanor* facilitation offense, it never checked the public record that would have triggered a further investigation due to the inconsistency between its report and the records.

83. The sole reason the inaccurate felony conviction was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

84. Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of a felony facilitation offense and that it should not have reported it.

85. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

1

2

**CloudKitchens Denies Plaintiff's Job Application**

3

86.     On or about January 23, 2023, Plaintiff was notified by CloudKitchens that

4

his background check came back with two felonies instead of one, which contradicted his

prior self-disclosure.

5

87.     While CloudKitchens' recruiter had previously informed the Plaintiff that

6

the felony he self-disclosed would not negatively impact his employment, after

7

CloudKitchens received the report, itterminated or rescinded the offer because the report

8

containedtwo felonies.

9

88.     Plaintiff explained that the report was inaccurately reporting a facilitation

10

conviction as a felony when it was a misdemeanor, but it was already too late because

11

Cloudkitchens had already made up its mind.

12

89.     Still on or about January 23, 2023, Plaintiff called Defendant and disputed

13

the inaccurate reporting of the facilitation conviction as a felony instead of a

14

misdemeanor in the hope that he could reverse the adverse action that Cloudkitchens had

15

taken.

16

90.     On that day, Plaintiff received a copy of his employment background check

17

by requesting it from Defendant's customer service representative.

18

91.     Plaintiff did not receive a copy of the report from CloudKitchens at the

19

time it took adverse action and he did not receive one from HireRight at the time it

20

supplied the information to CloudKitchens.

21

92.     Plaintiff was shocked upon reviewing the felony facilitation conviction

22

contained within the report.

23

93.     Immediately upon realizing that the facilitation conviction was being

24

misreported as a felony, still on January 23, 2023, Plaintiff contacted HireRight, this time

25

via email, and disputed the reporting of the inaccurate information once again.

26

27

28

94.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he had been convicted of another felony, both in relation to the Otter position, but also the impact of the same on his future.

95.     Specifically, Defendant reported a felony facilitation to commit traffic in stolen property conviction that is clearly labeled in the underlying court records as a *misdemeanor*. The underlying court records were available to Defendant prior to publishing Plaintiff's employment report to CloudKitchens and at all times that Defendant was supposedly conducting "research."

96.     However, not only did Defendant fail to conduct research, Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment-purposed Consumer Report**

97.     On January 23, 2023, desperate to secure employment with CloudKitchens and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant.  Plaintiff disputed via telephone and email with Defendant.

98.     Plaintiff identified himself and provided information to Defendant to support his dispute.

99.     Plaintiff specifically disputed the inaccurate reporting of a **felony** conviction that should have been reported as a misdemeanor.

100.    Plaintiff specifically asked Defendant to correct its false reporting in any employment report about Plaintiff quickly because time was of the essence, his start date had already passed.  There was a danger that the employer would (and ultimately did communicate) terminate the job offer.

101.    On January 23, 2023, Plaintiff received an email response from Defendant notifying Plaintiff they had received his dispute and would reinvestigate it.

102.    However, Defendant informed the Plaintiff that it could take 30 days to conduct the reinvestigation and report to the results to CloudKitchens.

103.    On February 2, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and conceding its inaccurate reporting by correcting the reporting of the criminal record from *felony* to misdemeanor.

104.    Defendant also communicated to Plaintiff that it had issued a corrected employment report to CloudKitchens, but it was already too late.

105.    When Plaintiff was informed by CloudKitchens that due to Defendant's inaccurate and duplicate reporting that he had a second felony, CloudKitchens formed a negative opinion about Plaintiff, terminated the employment offer,and/or moved on to other candidates.

106.    Defendant's false report cost Plaintiff a promising, well-paying job with CloudKitchens' Otter product.

107.    The position with City Storage was the best Plaintiff had ever been offered. The position was full-time, and Plaintiff was set to earn a $100,000/year with $100,000 in equity vesting over four years and a competitive benefits package.

108.    Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek new employment, Plaintiff has remained at his previous job with a salary over $20,000 lower with limited quarterly equity, unlike the more lucrative salary and equity participation of the CloudKitchens Otter position.

109.    As a direct and proximate result of the Defendant's failure to maintain strict procedures to ensure that the adverse public record information was complete and up to date or provide the Plaintiff with that adverse public record information at the time it supplied the information to CloudKitchens on or about January 2023, the Plaintiff was deprived of the opportunity to quickly attempt to correct the negative and false information.

110.    The Plaintiff diligently attempted to learn this very information when his start date was being delayed as a result of the background report being delayed.

111.    The reason that the FCRA requires the CRA to either provide the information likely to have an adverse impact on employment to the consumer at the same

time it supplies the information to the employer or maintain strict procedures to ensure an adverse public record is complete and up to date is to address the very type of violation that occurred in this case.

112.    Inaccurate felony conviction information was transmitted to the employer for weeks before it provided a "completed" report, the employer had already made the adverse employment decision by the time the report was stamped "completed."

113.    The injuries suffered by Plaintiff as a direct result of Defendant's erroneous felony conviction reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation, defamation per se, and invasion of privacy.

114.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

115.    Plaintiff relies on the factual allegations set forth in the preceding paragraphs of the Complaint to serve as the basis of Count I, violation of the FCRA's requirement that the CRA follow reasonable procedures to assure the maximum possible accuracy of the report about the Plaintiff.

116.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

117.  At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

118.  At all times pertinent hereto, the above-mentioned employment-purposed report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

119.  Defendant violated 15 U.S.C. § 1681e(b) by failing to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

120.  As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; physical injuries and sickness such as loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

121.  Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

122.  Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681k(a)
### Failure to Provide an "At The Time" Notice to the Plaintiff

123.  Plaintiff relies on the factual allegations set forth in the preceding paragraphs of the Complaint to serve as the basis of Count II, violation of the FCRA's

requirement that the CRA provide notice at the time it supplies public record information to the employer that is likely to have an adverse effect on employment.

124.    Plaintiff's consumer report was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

125.    As to Plaintiff, Defendant uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) to maintain strict procedures to ensure that the public records are complete and up to date, and therefore must necessarily rely on its compliance with § 1681k(a)(1).

126.    On information and belief, the Plaintiff alleges Defendant obtains public records including criminal records without reviewing the actual certified court records as defined by Maricopa County the only records that are reliable.

127.    Defendant did not provide Plaintiff a notice or copy of the adverse public record information that it supplied to CloudKitchens pursuant to 15 U.S.C. § 1681k(a)(1).

128.    On information and belief, Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within thirty (30) days before it furnished and sold these records in one of its reports.

129.    Defendant's failure to timely provide the required FCRA notices to the Plaintiff violated 15 U.S.C. § 1681k(a)(1).

130.    Defendant is aware of numerous rulings that put it on notice that because it does not maintain strict procedures to ensure the public records are complete and up to date, it must send a 1681k notice and report at the time the *information* is supplied to the employer.

131.    Defendant is aware or should be aware of the Maricopa County admonition that only the certified court record is considered accurate enough to use for any purpose, but especially in an employment purposed consumer check.

132.        The conduct, action, and inaction of Defendant was willful,

rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

133.    Plaintiff is entitled to recover actual, statutory and punitive damages, costs and attorneys' fees as well as appropriate equitable relief from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n & 1681o.

134.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; physical injuries and sickness including loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

    i.      Determining that Defendant negligently and/or willfully violated the FCRA;

    ii.      Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

    iii.      Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

    iv.      Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

///

1      RESPECTFULLY submitted this 22nd day of March 2023.

2                                          **CONSUMER ATTORNEYS**

3                                          */s/ Beth K. Findsen*
4                                          Beth K. Findsen, AZ #023205
                                           8245 N. 85th Way
5                                          Scottsdale, AZ 85258
                                           T: (602)807-6676
6                                          F: (718) 715-1750
7                                          E: bfindsen@consumerattorneys.com

8                                          *Attorneys for Plaintiff, Doe*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28