**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Daniel Wright,

          Plaintiff,

v.

HireRight LLC,

          Defendant.

No. CV-23-00493-PHX-SMM

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Docs. 45; 53), and Defendant's Motion to Exclude Expert Testimony of Douglas A. Hollon. (Docs. 47; 55). For the following reasons, the Court grants in-part and denies in-part Defendant's Motion for Summary Judgment and denies Defendant's Motion to Exclude Expert Testimony.

## I.    BACKGROUND

Plaintiff, Daniel Wright, brought suit against Defendant, HireRight LLC, alleging violations of the Fair Credit and Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, after Defendant provided an employment background check to Plaintiff's potential employer, which incorrectly labeled a prior offense as a felony, rather than a misdemeanor. (Doc. 9).

Plaintiff has two prior, relevant convictions. In 2013, when Plaintiff was nineteen (19) years-old, he was convicted of a drug-related Arizona felony. (Doc. 46 (Defendant's Statement of Facts "SOF") at ¶ 1). Then, in 2015, Plaintiff was convicted of a second Arizona felony, a class six undesignated felony, for facilitation to commit trafficking in stolen property. (Id. at ¶ 2). An undesignated felony provides for an offense to be

1  redesignated as a misdemeanor after the fulfillment of the conditions of probation and

2  discharge by the court. A.R.S. §13-604(c). Accordingly, in 2020, Plaintiff requested a court

3  to reduce his conviction to a misdemeanor—which the court granted. (Id. at ¶ 3).

4      In December 2022 and January 2023, Plaintiff interviewed for a job with

5  CloudKitchens. (Id. at ¶ 6).  During this process, Plaintiff disclosed his 2013 conviction,

6  but not his 2015 conviction. (Id. at ¶ 8). By the end of the year, Plaintiff contends he

7  received a verbal job offer, although the record establishes Plaintiff did not receive a formal

8  offer letter. (Doc. 78 (Plaintiff's Separate Statement of Facts ("SSOF") at ¶ 49); (SOF at ¶

9  10).

10      On January 11, 2023, CloudKitchens requested Defendant, a consumer reporting

11  agency, to prepare a background check on Plaintiff. (SOF at ¶ 11). The report created from

12  this background check was completed on January 24, 2023. (Id. at ¶ 11). The report

13  included both the 2013 and the 2015 convictions, and the 2015 conviction was labeled as

14  a "Felony (or equivalent) – Class 6 felony." (Id. at ¶ 12). Upon being queried, Defendant

15  admits that labelling the 2015 conviction as a felony, rather than a misdemeanor, was a

16  mistake. (Id. at ¶ 27). On the date the report was completed, and transmitted to

17  CloudKitchens, Plaintiff formally disputed the classification with Defendant and

18  Defendant opened a reinvestigation into the matter. (Id. at ¶ 29).

19      Meanwhile, Plaintiff discussed the background check with CloudKitchens. (Id. at ¶

20  30). On January 23, 2023, Plaintiff sent CloudKitchens court documents that proved his

21  2015 felony had been reduced to a misdemeanor. (Id. at ¶ 32). However, over a video-call

22  on January 27, CloudKitchens informed Plaintiff that they would not hire him. (Id. at ¶ 34).

23  On January 30, upon the completion of its reinvestigation, Defendant sent Plaintiff and

24  CloudKitchens an updated background check, which now had the 2015 conviction labeled

25  as "Misdemeanor (or equivalent) – Classification not recorded." (Id. at ¶ 35).

26  **II.     LEGAL STANDARD**

27      A party seeking summary judgment "bears the initial responsibility of informing the

28  district court of the basis for its motion [ ] and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## III.    ANALYSIS

Plaintiff sues under the FCRA.  The purpose of the Act is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Under the FCRA, only negligent or willful violations are actionable; a consumer may recover compensatory damages for negligent violations and statutory and punitive damages for willful violations. <u>See</u> 15 U.S.C. §§ 1681(n), 1681(o).

### A. Negligent Violation of the FCRA

"The FCRA provides for compensation in the form of actual damages and attorneys' fees if a consumer reporting agency negligently fails to comply with any provision of the FCRA." <u>Guimond v. Trans Union Credit Info. Co.</u>, 45 F.3d 1329, 1332 (9th Cir.1995). Plaintiff "has the burden of proving that his damages were caused by the defendant's violations of the FCRA." <u>Waddell v. Equifax Info. Servs., LLC</u>, No. CV-05-0092-PHX-DGC, 2006 WL 2640557, at *3 (D. Ariz. 2006), (quoting <u>Zala v. Trans Union</u>, No. 99–CV–0399, 2001 WL 210693, at *6 (N.D.Tex. 2001).

Plaintiff, contending the Defendant's misreporting the accuracy of his criminal history, claims economic and emotional damages in this case by advancing two theories as to the causation of these damages. First, Plaintiff indicates that the mere creation of the false report, and Plaintiff's awareness that it existed, caused him to experience emotional

damages. However, Plaintiff cites no cases that the mere sighting of a false report gives rise to actionable damages, nor does the statute suggest as such. Further, the factual record makes clear that it was not the knowledge of the false report that caused Plaintiff despair, but rather the loss of the potential job opportunity. (Doc. 66, Ex. A at 155:1-5) (Q: "[c]an you tell me about what emotional distress you claim occurred because of [the] background check? Plaintiff: Losing that job opportunity brought me back to a really dark place."). The Court finds that the loss of the potential job opportunity was the direct cause of Plaintiff's damages.

Second, Plaintiff asserts that Defendant's violation of the FCRA caused Plaintiff to lose the potential job opportunity. Defendant's position is that Plaintiff's criminal history, not Defendant's misreporting of the severity of Plaintiff's second conviction, is the true cause behind the loss of the potential job opportunity. Defendant asserts that Plaintiff advances no facts to defeat the what the records establishes: CloudKitchens would not have hired Plaintiff, even if the original background report correctly displayed his 2015 conviction.

CloudKitchens was aware that the misreported felony was a misdemeanor before it made the decision not to hire Plaintiff. (Doc. 53 at 7) (SOF at ¶ 8) ("Q: So you told them on a phone call that it was a misdemeanor?" [Plaintiff]: "Uh-huh"); see also, (Id. at ¶ 33) (Ms. Lynch stating Plaintiff told CloudKitchens his "real" criminal history before it made its decision) (Plaintiff stated he "showed [CloudKitchens] that their information was wrong").

The record clearly establishes that it was immaterial to CloudKitchens whether the 2015 offense was considered a felony or a misdemeanor. In his Declaration, Mr. Anthony DiBenedetto, the Associate General Counsel of CloudKitchens, stated "before finalizing the Company's hiring decision, [Plaintiff] informed [CloudKitchens] that his conviction for 'Facilitation to Commit Trafficking in Stolen Property, Second Degree' should be classified as a misdemeanor, rather than a felony . . . [t]hat distinction was immaterial to [CloudKitchens]." (See. Doc. 50, Ex. 4.).

- 4 -

However, Plaintiff asserts the declaration as inadmissible and controverted. (Doc. 77 at 4). First, Mr. DiBenedetto's personal knowledge of the decision to not hire Plaintiff is disputed. See Fed. R. Civ. P. 56(B)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge"). Plaintiff points to no evidence on the record that disputes Mr. DiBenedetto's personal knowledge, rather stating the declaration lacks information to substantiate Mr. DiBenedetto's knowledge. (Doc. 77 at 5).

Personal knowledge can be inferred from the statements themselves. Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990). This inference can be based on the declarants' "positions and the nature of their participation in the matters to which they swore." Id. Based on his position as Associate General Counsel of CloudKitchens and the lack of any contravening evidence against his personal knowledge, the Court finds that Mr. DiBenedetto's declaration is based on personal knowledge.[1]

Next, Plaintiff characterizes the declaration as inadmissible hearsay. See Fed. R. Civ. P. 56(B)(2) (prohibiting relying on hearsay in MSJ). However, the declaration is not inadmissible hearsay. Mr. DiBenedetto is not recounting out-of-court statements to prove the truth of the matter asserted; rather, he testifies based on his personal knowledge and his involvement in CloudKitchens' decision not to hire Plaintiff. Fed. R. Civ. Evid. 801(c).

Finally, Plaintiff asserts "Mr. DiBenedetto has avoided or ignored Plaintiff's notices and subpoena for deposition, depriving Plaintiff of the opportunity to test his statements as a witness and rendering his credibility at issue." (Doc. 77 at 4). Defendant name Mr. DiBenedetto in its Amended Initial Disclosures. (Doc. 80 at Ex. B). The Declaration was produced in Defendant's first document production. (Doc. 65 at Ex. C). At that point, two months of discovery remained. (Doc. 28 at 2). The Court does not find any evidence that Mr. DiBenedetto was avoiding a subpoena from Plaintiff.[2] As the Court finds that the record shows Plaintiff could have conducted a deposition of Mr. DiBenedetto, it will

---

[1] Plaintiff was also under the impression that the legal team was involved in his employment decision. See (SOF Ex. 1 at 86:17–88:7 ("Q: Do you know if they had a legal team that was looped in? A: Yes.")

[2] Then, seven (7) days before the end of discovery, Defendant received an email from Plaintiff that Ms. Findsen's declaration referenced. Defendant's counsel maintains that it could not accept the subpoena on behalf of Mr. DiBenedetto, as Defendant's counsel did not represent him. (Doc. 80 at 3).

1    consider the Declaration. <u>Cowboy v. Zinke</u>, No. CV-16-08094-PCT-DGC, 2018 WL

2    619722, at * 3 (D. Ariz. 2018).

3           Considering the record, including Mr. DiBenedetto's declaration, the Court finds

4    that Plaintiff has failed to show a genuine dispute of material fact. Plaintiff offers no

5    rebuttal evidence to Mr. DiBenedetto's Declaration, nor his email. The only evidence

6    Plaintiff indicates demonstrates that the faulty background check caused his loss of the

7    potential job opportunity is the testimony of Plaintiff and his girlfriend.  However, Plaintiff

8    admits that the two parties could not have "independent knowledge of CloudKitchen[s']

9    internal hiring processes and parameters." (Doc. 77 at 9) (Plaintiff goes further to state that

10   "[e]ven if [Defendant's brief was] an accurate representation of [Ms.] Lynch's testimony,

11   it would be completely irrelevant. [Ms.] Lynch's testimony was speculative, not based on

12   personal knowledge." <u>Id.</u>

13          For a claim under the FCRA asserting negligence, Plaintiff "has the burden of

14   proving that his damages were caused by the defendant's violations of the FCRA."

15   <u>Waddell</u>, 2006 WL 2640557, at *3. The established record has no genuine dispute of

16   material fact on the issue of causation. The record shows that the incorrect report did not

17   cause Plaintiff's damages. Therefore, the Motion is granted as to the negligent claims. <u>See</u>

18   <u>Celotex Corp.</u>, 477 U.S at 322-23 (holding that where party will have burden of proof on

19   an element essential to its case at trial and does not, after adequate time for discovery, make

20   a showing sufficient to establish the existence of that element, "there can be no genuine

21   issue as to any material fact since a complete failure of proof concerning an essential

22   element of the nonmovant's case necessarily renders all other facts immaterial.").

23   **B.  Defendant's Motion to Exclude Expert Testimony of Douglas A. Hollon**

24          Defendant moves for this Court to Exclude the Expert Testimony of Douglas A.

25   Hollon. Defendant's motion is governed by Rule 702 of the Federal Rules of Evidence:

26   A witness who is qualified as an expert by knowledge, skill, experience, training, or
     education may testify in the form of an opinion or otherwise if:

27          (a) the expert's scientific, technical, or other specialized knowledge will help the
            trier of fact to understand the evidence or to determine a fact in issue;

28          (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The Court finds Mr. Hollon's expert testimony to be admissible. First, Mr. Hollon's specialized knowledge will help the trier of fact to understand the evidence. Id. While Defendant concedes that Mr. Hollon may have credit expertise, it disputes that Mr. Hollon has any employment-related consumer report expertise or knowledge regarding the reporting of criminal records. (Doc. 55 at 6). Plaintiff asserts that Defendant is a consumer reporting expert, which includes both credit related matters and employment-related matters. (Doc. 56 at 9).

Mr. Hollon is undoubtedly an expert in the "consumer reporting" field. Mr. Hollon has over 18 years of experience in the credit reporting industry, 14 years of which were with Experian, one the major consumer reporting agencies and has testified in 13 FCRA cases an expert. (Expert Disclosure at 31-34). He is recognized as a consumer report expert by the Consumer Data Industry Association, which "is the voice of the consumer reporting industry, representing consumer reporting agencies including the nationwide credit bureaus, regional and specialized credit bureaus, background check companies." (Id. at 33-34; 3 fn. 1).

This narrowing of Defendant's expertise is inappropriate in this case, as the FCRA requires the use of reasonable procedures in procuring and using a "consumer report" which encompasses both credit reports and criminal background reports. U.S.C. § 1681a(d); see also, Syed v. M-I, Ltd. Liab. Co., 853 F.3d 492, 496 (9th Cir. 2017). Mr. Hollon's opinions will be helpful to the fact finder in determining whether reasonable procedures were followed by Defendant based on the facts of the case.

Further, the Court finds that Mr. Hollon based his opinion on sufficient facts. Fed. R. Evid. 702. Mr. Hollon reviewed Defendant's Answer, Defendant's Answers to Requests for Production of Documents, Defendant's Answers to Interrogatories, Defendant's Responses to Requests for Admission, Deposition of Defendant, plus Exhibits, dated December 7, 2023. (Expert Disclosure at 3). Defendant asserts that Mr. Hollon has not

reviewed enough facts, as he testified that he only reviewed Defendant's policies and procedures that were exhibits to HireRight's 30(b)(6) deposition transcript. (Doc. 55, Ex. B at 61:4–62:25). However, there is no requirement that an expert review all potentially relevant material so long as his opinions are based on sufficient facts.

Reviewing Mr. Hollon's statements, the Court finds that his testimony is the product of reliable principles and methods, that he has reliably applied to the facts of the case. Fed. R. Evid. 702. The Court finds Mr. Hollon's expert testimony to be admissible under the Federal Rules of Evidence and denies Defendant's Motion to Exclude his testimony.

## C. Willful Violation of the FCRA

Under the FCRA, a Plaintiff can recover statutory and punitive damages if a willful violation of the Act's requirements is shown. 15 USC §1681n(a)(1)(A). To show that a violation was willful, a plaintiff must show that the defendant either knowingly violated the Act or recklessly disregarded the Act's requirements. Marino v. Ocwen Loan Servicing LLC, (9th Cir. 2020), (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007).

Willfulness under the FCRA is generally a question of fact. See Guimond, 45 F.3d at 1333 ("The reasonableness of the procedures and whether the [ ] agency followed them will be jury questions in the overwhelming majority of cases,"); Cairns v. GMAC Mortgage Corp., No. CV 04–01840 PHX(SMM), 2007 WL 735564, *8 (D.Ariz. 2007) ("in this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of punitive damages is best left for the trier of fact to determine").

Looking at the evidence in a light most favorable to the Plaintiff, the Court finds that the record is filled with genuine disputes over material facts regarding Defendant's culpability. Defendant asserts they have multi-layered procedures set up to ensure the information it reported was complete and up to date. (Doc. 53 at 12). The procedures include training researchers how to read and report criminal records, including records from Arizona and training on reporting crime severities. (SOF at ¶ 15). Additionally, Defendant continuously monitors both researchers and third-party public vendor performance and accuracy rates, requiring its researchers to maintain a minimum accuracy

rate of 99.95%. (Id. at ¶ 16; 20-22).

Conversely, Plaintiff points the case history of the 2015 conviction, which contained an entry stating "NOTE: TO DESIGNATE CLASS 6 UNDESIGNATED FELONY AS A MISDEMEANOR." (RSOF at ¶ 12). Plaintiff alleges that this would communicate to a reasonable reader that the conviction was redesignated to a misdemeanor. (Doc. 77 at 14). Additionally, Plaintiff points to his expert witness whose report stated, "that Defendant's procedures were not consistent with industry standards[,] and . . . that had [it] maintained adequate policies and procedures, [it] would [not have misreported Plaintiff's offense]." (RSOF at ¶ 26.) Defendant disputes the reliability of Mr. Hollon's report.

Further, the parties dispute over what conclusions a fact finder should draw from the December email reminding Defendant's employees how to correctly report Arizona 'class six undesignated felonies.' (Doc. 53 at 12); (RSOF at ¶ 15). While Defendant portrays the email as an example of procedures to ensure accuracy, Plaintiff characterizes the emails as a response to a "pervasive" problem. Further, while Plaintiff and Defendant agree that the guidelines in the email were not followed in the case of Plaintiff's background report, they disagree as to whether this shows a reckless violation of the FCRA.

///
///
///
///
///
///
///
///
///
///
///
///

Looking at the evidence in a light most favorable to the Plaintiff and considering the precedent to treat the culpability of an actor under the FCRA as a question of fact for the jury, it would be improper to grant Summary Judgment. There is a genuine dispute over Defendant's procedures, policies, and actions in this case. Therefore, the Motion for Summary Judgment as to the willful violation of the FCRA is denied.

**IT IS ORDERED granting in-part and denying in-part** the Motion for Summary Judgment. (Doc. 45)

**IT IS FURTHER ORDERED denying** the Motion to Exclude the Testimony of Douglas A. Hollon. (Doc. 47).

**IT IS FURTHER ORDERED dismissing** Plaintiff's claims asserting damages under 15 U.S.C. § 1681(o), for a negligent violation of the FCRA.

**IT IS FURTHER ORDERED** that Plaintiff's claims asserting damages under 15 U.S.C § 1681(n), for a willful violation of the FCRA, are not dismissed.

Dated this 27th day of March, 2025.

Stephen M. McNamee
Senior United States District Judge

- 10 -